**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**RICHARD STACHOWSKI,**

**Plaintiff,**

**CIVIL ACTION NO. 09-13702**

**vs.**                                    **DISTRICT JUDGE JULIAN ABELE COOK**
                                          **MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

**Defendant.**
_____/


**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION:**    Plaintiff's Motion for Summary Judgment (Docket nos. 9, 15) should be DENIED, that of Defendant (Docket no. 17) GRANTED, and the instant complaint dismissed as there was substantial evidence on the record that Plaintiff underwent medical improvement related to his ability to work and is capable of performing unskilled sedentary work.

\*\*\*

**II.    PROCEDURAL HISTORY:**

In a decision dated October 24, 2002 the Social Security Administration found that Plaintiff was disabled as of October 29, 2002 due to testicular cancer with metastases to the liver, lungs and kidney, a condition meeting Listing 13.25. (TR 20-21). On December 19, 2006 the Social Security Administration conducted a disability review and determined that Plaintiff no longer met Listing 13.25 and he was no longer disabled as of December 1, 2006. (TR 19). The decision was upheld upon reconsideration and a requested *de novo* hearing was held on January 16, 2009 before Administrative Law Judge (ALJ) Melvyn B. Kalt. (TR 20, 24, 551). The ALJ subsequently found

1

that Plaintiff was no longer disabled as of December 1, 2006[1]. (TR 24). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 7-9). The issue raised for review is whether the ALJ's decision to terminate his benefits was supported by substantial evidence on the record.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony

Plaintiff opted to appear without representation at his hearing, despite notice by the ALJ of his right to be represented at the administrative hearing. (TR 553-55). Plaintiff was 45 years old at the time of the hearing. (TR 556). Plaintiff has an eleventh grade education. (TR 556). Plaintiff has past work experience as a construction laborer and he was able to operate a hi-lo. (TR 565). Plaintiff testified that he last worked in May 2002, at which time he was awarded benefits based on having cancer. (TR 556).

Plaintiff testified at the hearing that the cancer was in remission. (TR 556). Plaintiff testified that despite the cancer being in remission, he now feels he is disabled due to other health conditions that arose as a result of the cancer. Plaintiff testified that he has peripheral neuropathy, he does not sleep well at night, he has central nervous system problems that cause everything to "spin," the temperature of his hands and feet is 32 degrees, he has balance, sleep, speech and short term memory problems, a bulging disc, an annular tear, pressure valve control problems with his heart and "a hole burned in [his] spine from T2 to T10". (TR 557-58, 562).

---

[1]The ALJ's decision was initially issued on March 13, 2009 and an Order Vacating Decision was issued on March 23, 2009 due to a clerical error in the March 13 decision. The ALJ issued his new decision on April 30, 2009. (TR 19-24, 25).

Plaintiff testified that he can lift five or ten pounds and he can lift a gallon of milk. (TR 558). Plaintiff testified that he goes grocery shopping and is able to drive himself and load groceries from the cart to his car. (TR 558). Plaintiff testified that he has a handicap permit for his car and drives his child to school everyday. (TR 559). He testified that he can walk about 100 feet before he has to get off his feet or sit down and he can sit for about 25-30 minutes at a time. (TR 559). Plaintiff testified that he could not do a job that involved being able to sit and stand and pick up the phone because he has central nervous system problems that result in a spinning sensation for which he needs to sit or lie down. (TR 562). The ALJ questioned Plaintiff regarding what would happen if he had a similar attack while he was driving. Plaintiff testified that his doctor advised him to be very careful driving due to the spinning and "that's why I have good car insurance in case I ever did get in an accident or something happened, then that would be dealt with." (TR 562).

Plaintiff testified that his Neurontin medication makes him sleepy so after he wakes up with his son in the morning and gets him off to school, Plaintiff sleeps for three to four hours because he does not sleep well at night. (TR 560). Then he makes lunch, watches television and picks his son up from school. (TR 560). Plaintiff testified that he is able to use the computer and access the Internet. (TR 564).

### B.    Medical Evidence

#### 1.    *Evidence of Physical Impairments*

In approximately July 2002 Plaintiff was diagnosed with "right testicular malignant mixed germ cell tumor, embryonal yolk sac components with possible chorio carcinoma." (TR 331-41, 490-91). He underwent an orchiectomy and chemotherapy. (TR 213, 217, 331, 401, 438).

In 2004 Plaintiff began complaining of pain and numbness in the lumbar area and lower back pain into the medial thigh and medial lower leg with numbness in both feet and all toes. (TR 299).

Plaintiff underwent an EMG on June 21, 2004 which revealed evidence of mild right sural sensory mononeuropathy and no electrophysiologic evidence of a lumbosacral radiculopathy, plexopathy, myopathy or polyneuropathy affecting the bilateral lower extremities.  (TR 276-77).

In December 2004 Plaintiff was examined by Lan Zhou, M.D., for neuromuscular disorders, who concluded that Plaintiff "may have toxic sensory neuropathy/neuronopathy from Cisplatin exposure; however, persistent and progressive symptoms despite completing chemotherapy 2 years ago is quite unusual."  (TR 305).  The doctor noted that the symptoms and findings were of a "small fiber nature" but quite asymmetrical and Plaintiff had low back shooting pain and spine tenderness which raised a concern of radiculopathy.  (TR 305).

In April 2005 Plaintiff was diagnosed with peripheral neuropathy which started after he finished chemotherapy and was attributed to Cisplatin.  (TR 377).          On June 17, 2005 Plaintiff reported that his back pain which radiated down to both feet, was improved with Neurontin.  (TR 373).

On December 5, 2005 Plaintiff was examined by Seth M. Kantor, M.D., who noted that Plaintiff has a "history of testicular cancer with metastasis, status post chemotherapy and radiation with chronic back pain and signs or symptoms consistent with fibromyalgia."  (TR 326).  Dr. Kantor recommended Lyrica, Cymbalta or Zanaflex with an exercise regime and eight hours of sleep per night.  (TR 326).

A January 26, 2006 MRI revealed a normal cervical spine and a tiny syrinx from the upper body of T3 to T10 with no other abnormalities seen.  (TR 353-54).  Plaintiff underwent a state agency physical examination with Habib Gennaoui, M.D., on November 28, 2006.  (TR 342-45).  Dr. Gennaoui concluded that Plaintiff had history "of testicular cancer status post chemotherapy and right orchiectomy," "pain and numbness all over his body mostly due to peripheral neuropathy, may

4

be due to complication of the chemotherapy," "multiple complaints all over his body, mostly due to complication of the chemotherapy" and fibromyalgia. (TR 343). On December 12, 2006 Byong-Du Choi, M.D., completed a Physical Residual Functional Capacity Assessment and concluded that Plaintiff suffers from testicular carcinoma in remission and peripheral neuropathy. (TR 194-201). CT scans of June 2005 and November 2006 and ultrasounds of June and July 2005 showed no evidence of metastatic mass. (TR 365-68, 371, 372).

A January 6, 2007 MRI revealed a disc bulge at L3/L4 and L4/L5 without any significant stenosis, "exiting nerve roots are in close proximity to the disc at the L3/L4 level," "small central posterior annular tear at L3/L4," and "left foraminal and far lateral disc herniation at L2/L3 without any significant neural foraminal narrowing." (TR 351-52).

On April 19, 2007 medical consultant Robin Mika, D.O., completed a Physical Residual Functional Capacity Assessment and concluded that Plaintiff has a primary diagnosis of herniated disc and a secondary diagnosis of polyneuropathies secondary to chemotherapy. (TR 203-10). Dr. Mika concluded that Plaintiff can lift and/or carry ten pounds occasionally and eight pounds frequently, can stand and/or walk at least two hours of an eight-hour work day and sit about six hours of an eight-hour work day and is limited to frequent but not continuous pushing and/or pulling with the upper and lower extremities. (TR 204). Plaintiff should be limited to only occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, and only occasional balancing, stooping, kneeling, crouching, and crawling and should avoid unprotected heights. (TR 205). Plaintiff is limited in manipulation to frequent but not continuous bilateral overhead reaching and bilateral handling, fingering and feeling. (TR 206). Plaintiff should avoid concentrated exposure to extreme heat and cold and avoid all exposure to vibrations and hazards including machinery and heights. (TR 207). Dr. Mika concluded that Plaintiff's ADLs and physical findings

would allow him to perform sedentary work.  (TR 208).

A July 27, 2007 Oncology Report from Karmanos Cancer Center was completed by Tannu Sahay, M.D.  (TR 357-58).  Dr. Sahay stated that Plaintiff "has been in complete remission since the completion of his treatment in October 2002" and that his "last surveillance imaging studies on July 25 shows no evidence of recurrence."  (TR 358).  Other medical reports from Karmanos are consistent with the finding that Plaintiff was in complete remission, including reports from June 17, 2005 and January 19, 2007.  (TR 361-62, 374).  An August 2007 echocardiogram was normal.  (TR 415-16).

The record contains letters from Brent D. Smith, D.O., to "Whom It May Concern" dated September 24, 2004, November 27 , 2005, August 15, 2007 and December 16, 2008.  (TR 414, 436, 507).  Dr. Smith consistently opined that Plaintiff's "diagnoses are causally related to chemical exposure from his work environment" and that Plaintiff is "totally disabled."  (TR 414, 436).  In the most recent of the letters, Dr. Smith listed Plaintiff's diagnoses as testicular cancer (embryonal cell), status post right orchiectomy, chronic sinusitis, peripheral neuropathy and polyarthralgia.  (TR 507).  Dr. Smith listed Plaintiff's daily medications as Nasonex, Allegra and Neurontin.  (TR 507).

A December 2008 nerve conduction study that showed upper extremity motor findings and upper extremity sensory findings were normal on the left and not noted on the right.  (TR 511-12).  Lower extremity motor findings were all normal except peroneal F-wave and tibial F-wave were abnormal on the left, normal on the right.  (TR 512).  Lower extremity sensor findings showed abnormal sural DSL on the right, all else normal.  (TR 512).  Plaintiff's wrist skin surface temperature was 33.5 degrees C on the left, ankle skin surface temperature was 29.8 degrees C on the left and 28.5 degrees C on the right, and sural nerve skin surface temperature was 31.5 degrees C on the right.  (TR 512).

## 2.   *Evidence Of Mental Impairments*

In June 2004 and December 2004 Plaintiff complained of problems with short term memory. (TR 281, 293).  On August 9, 2004 Plaintiff underwent a neuropsychological evaluation with Michael J. Vredevoogd, Ph.D.  (TR 245-49).  Plaintiff was "referred for evaluation due to concerns regarding reports of memory loss and paresthesia associated with long-term exposure to formaldehyde."  (TR 245).  The doctor found that a "language related learning disability is suggested by the pattern on academic and intelligence testing" but "with regard to the other reported deficits, the pattern of findings is not consistent with patterns typically seen in cortical injuries."  (TR 248).  The doctor reported that Plaintiff "demonstrates normal to superior range executive functions."  (TR 248).  The doctor noted that Plaintiff had "severely impaired memory dysfunction in both verbal and visual-spatial modalities" and that such a severe but isolated memory "impairment is highly unlikely and suggests contribution from psychological factors."  (TR 248).

On September 15, 2004 Plaintiff underwent a psychiatric evaluation with Antonio Nucum, Jr., D.O.  (TR 250-51)   Dr. Nucum concluded that at that time there was no significant symptomatology that warranted psychological or psychiatric treatment.  (TR 251).  The doctor did not feel that Plaintiff suffered from an Axis I or Axis II diagnosis.  (TR 251).  On December 15, 2006 Rom Kriauciunas, Ph.D., licensed psychologist, reported on a Psychiatric Review Technique that Plaintiff has no medically determinable impairment.  (TR 171).

## C.   **Vocational Expert Testimony**

The record contains Vocational Interrogatories completed by a Vocational Expert (VE).  (TR 513-14).  The VE classified Plaintiff's past work as a mason/laborer and hi-lo driver as semi-skilled, very heavy in exertion with no transferable skills to sedentary work.  (TR 513).  The VE testified that if Plaintiff's testimony were fully credited, his need to lie down to manage dizziness and his

need to sleep for three to four hours every morning after driving his child to school would preclude the ability to sustain full time work.  (TR 514).

## IV.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION:

The ALJ found that at the time of Plaintiff's most recent favorable decision finding him disabled, the "comparison point decision" ("CPD") on October 24, 2002, Plaintiff suffered from testicular cancer with metastases to the liver, lungs and kidney medically equal to Listing section 13.25, 20 C.F.R Part 404 Subpart P, Appendix 1, 20 C.F.R. § 404.1520(d).  (TR 21).  The ALJ found that Plaintiff had not engaged in substantial gainful activity through December 1, 2006.  (TR 21).  The ALJ found that as of December 1, 2006 Plaintiff suffered from peripheral neuropathy and lumbar disc herniation, both severe impairments, however, he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments.  (TR 21).  The ALJ found that medical improvement occurred as of December 1, 2006 and the medical improvement is related to Plaintiff's ability to work because the impairment that was present at the time of the CPD no longer met or was equal to the Listing of Impairments.  (TR 21).  The ALJ concluded that based on the impairments present as of December 1, 2006 and as a result of medical improvement, Plaintiff did not have the capacity to perform his past relevant work but had the capacity to perform sedentary unskilled work and a finding of "not disabled" was directed by Medical-Vocational Rule 201.25.  (TR 23-24). Therefore he was not suffering from a disability under the Social Security Act. (TR 24).

## V.      LAW AND ANALYSIS:

### A.      Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework For Social Security Disability Determinations**

Plaintiff's initial Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      he was not presently engaged in substantial gainful employment; and

(2)      he suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work. *See* 20 C.F.R.§ 404.1520(a)-(f).  If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  *See* 20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).  Plaintiff was initially determined to be disabled at step two of the analysis.  The ALJ's recent determination that Plaintiff is no longer disabled was made in accordance with the evaluation steps set forth at 20 C.F.R.§ 404.1594(f)(1)-(8).

Plaintiff alleges that the ALJ's decision that Plaintiff's disability ended on December 1, 2006 is not supported by substantial evidence.  (Docket nos. 9, 15).

**C.     The Limited Scope of the Court's Review**

The Court is mindful that it is required to construe Plaintiff's pro se pleadings liberally and hold them to "less stringent standards than formal pleadings drafted by lawyers."  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  "The district court has jurisdiction to review the final decision of the Commissioner denying social security benefits under 42 U.S.C. § 405(g)."  *Baker v. Sec'ty of Health and Human Servs.*, 234 F.3d 1267 at *1 (6th Cir. Nov. 2, 2000).  There is an exception to

the district court's limited jurisdiction for constitutional challenges. *See Hilmes v. Sec'ty of Health and Human Servs.*, 983 F.2d 67, 70 (6th Cir. 1993).

The Court notes that Plaintiff's brief, far in excess of the twenty-page limit under E.D. Mich. Local Rule 7.1(d)(3), both asks for a reversal of the final decision of the ALJ and states "United States Constitution, and Bill of Rights, 5th and 6th Amendments." (Docket no. 15 p. 2). Plaintiff repeatedly references the 5th and 6th Amendments throughout his brief. The Court cannot determine what constitutional claim is raised in relation to these Amendments. Merely referencing the Amendments is not sufficient to establish a Constitutional claim. *Baker*, 234 F.3d 1267 at *1 (Where pro se plaintiff's complaint was described as "rambling and confusing" she appeared to allege fraud, negligence and malpractice by the defendants and the district court properly dismissed the case for lack of subject matter jurisdiction); *see also Morris v. Sullivan*, 897 F.2d 553, 560 (D.C. Cir. 1990) ("courts are not required to entertain frivolous claims merely because they are cloaked in constitutional garb").

The Court notes that Plaintiff has submitted to both this Court and to the ALJ much additional information related to cancer generally and possible origins of cancer, including references to a Michigan Cancer Surveillance Program and allegations related to Michigan's "OSHA Program," a Michigan Cancer Registry, and unsubstantiated allegations related to the "cancer registry," for example, Plaintiff's allegation that "you can't send us (Plaintiff) on wild goose chases to find-out (sic), what cancer program, plaintiffs, cancer belongs too; (sic) and or etc."[2] (Docket nos. 9, 15; TR 466-76).

_____

[2] The Court also notes that Plaintiff admitted in his hearing that he accumulated much of the cancer background information himself including by accessing the internet. (TR 466-73, 561, 564-65).

Plaintiff also filed with the Court a document titled "Evidence For Which Findings And Decisions Were Based Upon." (Docket no. 9). This document has 18 exhibits which loosely correspond to subsections of Plaintiff's forty-page Motion for Summary Judgment. (Docket no. 15). The Court has reviewed and considered the document and exhibits submitted as docket no. 9. The only documents submitted with docket 9 that arguably relate to Plaintiff's medical conditions and impairments are a chemotherapy order and administrative record dated October 16, 2002 (exhibit 4), a Disability Interview form completed by Plaintiff dated October 24, 2002 (exhibit 10), a Pulmonary Function Analysis dated August 6, 2002 (exhibit 11) and a July 18, 2005 letter from Karmanos Cancer Institute to Plaintiff asking him to complete a survey about his experience at the Institute (exhibit 13). None of these documents is new or material evidence requiring remand pursuant to sentence six of 42 U.S.C. § 405(g). They relate to the period of time for which Plaintiff was determined to be disabled and they relate to Plaintiff's cancer, the basis for the initial disability determination.

The remaining documents relate to Plaintiff's inclusion on a state of Michigan cancer registry, including a Michigan Cancer Surveillance Program Cancer Reporting Manual, several administrative documents from SSA related to noticing Plaintiff's reconsideration hearing (exhibit nos.16, 17), an Order Vacating Decision (exhibit no. 14) which appears in the Transcript, and a signed "Authorization To Disclose Information To The Social Security Administration" (exhibit 18). Exhibits 1-3 are documents and correspondence between Plaintiff and the Social Security Administration that refer to Plaintiff's complaint against SSA that SSA discriminated against him on the basis of disability and retaliation. (Docket no. 9 exhibits 1-3). As set forth above, Plaintiff has not sufficiently plead or alleged constitutional claims in this action. As to the remaining documents, some of these documents already appear in the Transcript before the Court. The

12

remainder are beyond the scope of the Court's review, as set forth above.

The Court should find that Plaintiff has not made allegations that establish subject matter jurisdiction of this Court beyond a review of the Commissioner's final decision denying Social Security benefits.  42 U.S.C. § 405(g).

### D.     Analysis

### 1.     Whether Plaintiff Underwent Medical Improvement Related To His Ability To Work

The ALJ found that as of December 1, 2006, as a result of medical improvement, Plaintiff was no longer disabled when he was found to have the RFC to perform sedentary unskilled work. (TR 21, 23-24).  Plaintiff argues that this finding is not supported by substantial evidence because he also suffers from neurological impairments.

Once a claimant has been awarded disability benefits, an ALJ must find that there has been a medical improvement in the beneficiary's condition before terminating the claimant's benefits. Title 42 U.S.C. § 423(f) provides:

> A recipient of benefits under this title . . . based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by –
>
> (1) substantial evidence which demonstrates that –
>
>> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>>
>> (B) the individual is now able to engage in substantial gainful activity;

42 U.S.C. § 423(f)(1).  "If substantial evidence supports both prongs, then the Secretary correctly terminated" the claimant's benefits.  *See Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284,

286 (6th Cir. 1994). Any improvement in the beneficiary's impairment meets the statutory standard for medical improvement. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(c)(1).

"To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled." *Shepherd v. Apfel*, 184 F.3d 1196, 1201 (10th Cir. 1999). "Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision." *Id.* The regulations set forth evaluation steps at 20 C.F.R. § 404.1594(f) to assure that disability reviews are carried out in a uniform manner. The ALJ properly engaged in the evaluation of whether Plaintiff had a continuing disability. *See* 20 C.F.R. § 404.1594(f). At the first through fourth steps of the evaluation the ALJ found that Plaintiff had not engaged in substantial gainful activity, Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of the Listings, there had been a medical improvement as shown by a decrease in medical severity and the medical improvement was related to Plaintiff's ability to work. *See* 20 C.F.R. § 404.1594(f)(1)-(4).

Plaintiff was initially determined to be disabled as of October 24, 2002 because his impairment met Listing 13.25 of the Category of Malignant Neoplastic Diseases, Testicles, "tumor with metastatic disease progressive or recurrent following initial chemotherapy." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, Listing 13.25. Plaintiff has the burden of demonstrating that his impairment meets or equals a listed impairment. *Foster v Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder"). The ALJ stated that as of the CPD, Plaintiff

14

had testicular cancer which had metasticized to the liver, lungs and kidney. (TR 21). The parties do not challenge the prior finding that Plaintiff was disabled. The ALJ found, however, that as of December 1, 2006 Plaintiff's cancer was in remission. (TR 21).

The ALJ pointed out that on July 7, 2006 Jon F. Suleskey, D.O., opined that Plaintiff was "doing well overall" and there was no lymphadenopathy throughout the neck, chest and abdomen. (TR 329). Plaintiff complained of no nausea, vomiting, hemoptysis, shortness of breath or other complaints. (TR 329). The ALJ's finding is consistent with multiple reports dated throughout 2006 and 2007 which noted that Plaintiff's cancer was in remission and Plaintiff's testimony that his cancer is in remission. (TR 361-62, 357-58, 556). There is no evidence to the contrary. The December 1, 2006 CPD date, while one of the later dates of record, is supported by the medical consultant Dr. Choi's opinion dated December 12, 2006 stating that Plaintiff's cancer was in remission. (TR 194-201).

Substantial evidence supports the ALJ's decision that medical improvement occurred as of December 1, 2006. Plaintiff no longer met Listing 13.25 and his medical improvement was related to his ability to work. *See* 20 C.F.R. § 404.1594(c)(3)(i) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.").

## 2. *Plaintiff's Ability To Engage In Gainful Activity*

Next, the ALJ properly considered whether Plaintiff was able to engage in gainful activity before concluding that his disability had ended. *See* 20 C.F.R. § 404.1594(c)(3)(i). After finding that Plaintiff had a medical improvement related to his ability to work, the ALJ considered whether

all of Plaintiff's current impairments in combination are severe and the impact of the impairments on Plaintiff's ability to work. *See* 20 C.F.R. § 404.1594(f)(6).

The ALJ's conclusion that Plaintiff has the severe impairments peripheral neuropathy and lumbar disc herniation but that they do not meet or equal the Listing is supported by substantial evidence. (TR 21). As set forth above, to meet the requirements of a listed impairment, Plaintiff must meet all of the elements of the listed impairment. *See Hale v. Sec'y of Health and Human Servs.*, 816 F.2d 1078, 1083, (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). Plaintiff has not shown that he meets the Listing and the ALJ's decision at this step is supported by substantial evidence.

As the ALJ pointed out, Plaintiff was diagnosed with a lumbar herniated disc and peripheral neuropathy. (TR 21, 23). In determining the severity of Plaintiff's lumbar spine impairment, the ALJ noted that a January 2007 MRI revealed a disc bulge at L3-4 and L4-5 without significant stenosis, a small annular tear at L3-4 and a disc herniation at L2-3 without significant neural foraminal narrowing. (TR 22, 351-52). Dr. Antoinette H. Wozniak noted that Plaintiff reported only occasional back pain and constipation. (TR 361-62). The ALJ correctly pointed out that Plaintiff was neurologically "intact" at examinations in January and July 2007. (TR 22). In January 2007 the examining doctor reported that Plaintiff had no clear focal or motor deficits and examination of the extremities revealed positive pulses, no edema, clubbing or cyanosis and in July 2007 the examining doctor reported that Plaintiff had no focal neurological deficit. (TR 358, 362).

The ALJ pointed out that Dr. Gennaoui performed a state agency consultative examination on Plaintiff in November 2006. (TR 22, 342-45). Dr. Gennaoui reported that Plaintiff had no difficulty getting onto and off the examining table, had some decreased bilateral vibration sensation in the upper and lower extremities and lumbar spine tenderness, but there was no motor deficit,

straight leg raising was negative, and there was no pedal edema or joint deformity of the extremities. (TR 343). In July and January 2007 Plaintiff's treating physicians did not note complaints of dizziness and in July 2007 the physician noted that Plaintiff denied shortness of breath, chest pain, palpitation, nausea, vomiting and headache. (TR 357, 361).

The ALJ correctly pointed out that EMG and NCS studies of the lower extremities in December 2008 revealed only mild polyneuropathy and mild L5 and S1 radiculopathy. (TR 22, ). The study also revealed normal upper extremity sensory findings on the left and no results noted on the right. (TR 511-12).

The ALJ's findings that Plaintiff suffers severe impairments of peripheral neuropathy and lumbar disc herniation but that they do not meet or equal the Listings are supported by the record. The ALJ properly pointed out that there is no evidence of muscle atrophy, reflex loss or motor loss. 20 C.F.R. Ch. III, Subpt. P, App. 1, Listings 1.04, 11.14. The objective medical evidence reveals mild impairments and there is no evidence that he meets or equals the Listing for these impairments.

The ALJ then determined that Plaintiff has the RFC to perform the full range of sedentary unskilled work. (TR 22). Plaintiff argues in his brief that the ALJ's determination that he can perform the full range of sedentary work is not supported by substantial evidence because Plaintiff has "restrictions in sitting to 30 min. and EMG evidence of polneuropathy (sensory loss to the hands and feet) which would cause manipulative impairment. These and several other factor (sic) produce less than a full range of work and direct a finding of disabled." (Docket no. 15 p. 34).

Plaintiff does not directly challenge the ALJ's determination of his credibility, but he substantively argues that the ALJ's RFC is contrary to his own testimony that he can sit for 25-30 minutes and his diagnosis of polyneuropathy. (TR 559). The Court notes that the ALJ engaged in an analysis of Plaintiff's credibility and found that Plaintiff's statements concerning the extent of

his symptoms was not fully credible. (TR 22-23). The ALJ also pointed out that Plaintiff's complaints of his dizziness and sleepiness, that he needs to lie down to manage dizziness, and the need to sleep for three to four hours every morning are not credible. (TR 22-23). The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly because the ALJ has the opportunity to observe the demeanor of a witness. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1234 (6th Cir. 1993). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination. The ALJ pointed out that the objective medical evidence did not support the severity of the allegations. He noted that objective clinical findings have been "relatively unremarkable except for some limitation of motion of the lumbar spine, some tenderness of the lumbar spine, and mild peripheral neuropathy." (TR 23). The ALJ did not limit his determination to the objective medical evidence.

The ALJ properly considered Plaintiff's activities of daily living. The ALJ pointed out that Plaintiff complained of continued difficulty with neuropathy and he uses the computer and the internet on a regular basis. (TR 22). Plaintiff testified that he continues to drive, despite complaints of disabling dizziness, and drives his child to and from school each day. (TR 22, 23, 559, 562). Plaintiff testified that he goes grocery shopping, is able to drive himself and is able to load groceries from his cart to his car. (TR 558). He is able to mow half of his lawn before he must sit and rest. (TR 559). The ALJ pointed out that Plaintiff has "good" exercise tolerance in his cardiac testing. (TR 23). The ALJ correctly pointed out that Plaintiff's allegations of side effects from his medications are not supported by the his physician's records. (TR 22).

When asked what would prevent Plaintiff from working, Plaintiff testified that he suffers from a spinning sensation for which he must sit or lie down. Plaintiff testified that he cannot work

due to dizziness and the need to lie down as a result. The references to dizziness in the record are based on Plaintiff's subjective reports. (TR 342). As the ALJ pointed out, despite reports of disabling sleepiness, Plaintiff continues to drive. (TR 22). At the hearing, Plaintiff testified that despite his disabling dizziness he continues to drive and his neurologist merely told him to "be very careful." (TR 562). The ALJ found that Plaintiff continuing to drive was inconsistent with his allegations of disabling symptoms. (TR 22). The ALJ's findings regarding Plaintiff's credibility and his symptoms are supported by substantial evidence. *See* 20 C.F.R. § 404.1529(c)(2); *see also* 20 C.F.R. § 404.1529(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

Plaintiff argues that Dr. Smith is his primary care physician and that on December 16, 2009 Dr. Smith signed a "permanently disabled statement." (Docket no. 15 pp. 11, 13, 19). As set forth above, Dr. Smith gave several opinions that Plaintiff is "totally disabled" or "permanently disabled." (TR 414, 436, 507). The most recent opinion before the ALJ is dated December 16, 2008 in which Dr. Smith concluded that it is his "medical opinion that [Plaintiff] is permanently disabled." (TR 507). No physician of record, except Dr. Smith, has opined that Plaintiff is "disabled" or has otherwise limited Plaintiff's activity to preclude all work.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Dispositive administrative findings relating to the determination of a disability and

Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e)(1). The ALJ is required, however, to give the reasons for the weight he assigned to the treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2).

The ALJ did not err in not adopting Dr. Smith's conclusory opinion that Plaintiff is "permanently disabled." The ALJ correctly gave good reasons for his decision not to give controlling weight to this opinion. The ALJ pointed out that the objective medical evidence does not corroborate Dr. Smith's opinion that Plaintiff is permanently disabled. (TR 23). The ALJ pointed out that Plaintiff's cancer is in clinical remission, a fact which is not noted in Dr. Smith's list of diagnoses. The ALJ also pointed out where clinical findings related to the lumbar herniated disc were relatively unremarkable, and EMG and NCS studies revealed only mild poly neuropathy. (TR 23). The ALJ was not required to adopt the treating physician's conclusory opinion on the ultimate issue of disability and yet the ALJ gave good reasons for his decision not to adopt the opinion. His finding regarding Dr. Smith's opinion is supported by substantial evidence in the record.

The ALJ found that as of December 1, 2006 Plaintiff has the RFC to perform a full range of unskilled sedentary work. *See* 20 C.F.R. § 404.1594(f)(7). Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary is walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The limitation to sedentary work is consistent with Plaintiff's testimony

that he can lift five or ten pounds and he can lift a gallon of milk and load his own groceries into his car. (TR 558). Substantial evidence supports the ALJ's finding that Plaintiff can perform the sitting requirements of sedentary work. In December 2006 state agency consultant Dr. Choi opined that Plaintiff frequently lift ten pounds, stand and/or walk about six hours of an eight-hour workday and sit about six hours of an eight-hour workday with unlimited ability to push and/or pull except consistent with exertional limitations. (TR 195). In April 2007 Dr. Mika opined that Plaintiff has the ability to occasionally lift ten pounds, frequently lift eight pounds, stand and/or walk about two hours and sit about six hours of an eight-hour workday. (TR 204). Dr. Mika concluded that Plaintiff had no motor loss in the extremities and Plaintiff's ADLs and physical findings would allow Plaintiff to perform sedentary work. (TR 208). The Court also notes that despite mental evaluations, there is no medical evidence in the record to support a need for mental limitations in Plaintiff's RFC. The ALJ's finding that Plaintiff had the ability to perform unskilled sedentary work activity is supported by substantial evidence.

The ALJ determined that Plaintiff cannot perform his past relevant work as a mason/laborer and hi-lo driver, which the VE classified as semi-skilled, very heavy in exertion with no transferable skills to sedentary work. (TR 513). *See* 20 C.F.R. § 404.1594(f)(7). The ALJ then relied on the Medical-Vocational Rules to conclude that an individual of Plaintiff's age, defined as a younger individual age 18-44, with limited or less education, able to communicate in English and with previous relevant work experience that was skilled or semi-skilled and is not transferable is not disabled[3]. 20 C.F.R. Part 404, Subpart P, App. 2 section 201.25. The ALJ's finding that Plaintiff

_____

[3]Despite the limitation to unskilled work, section 201.00 states that "[a]pproximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy. . . . (b) . . . While sedentary work represents a significantly restricted range of work, this range in itself is not so prohibitively restricted as to negate work capability

was no longer disabled as of December 1, 2006 is supported by substantial evidence. *See* 20 C.F.R. § 404.1594(g)(2).

## VI.   CONCLUSION

The ALJ's decision was within the range of discretion allowed by law, it is supported by substantial evidence and there is insufficient evidence to conclude otherwise. Defendant's Motion for Summary Judgment (docket no. 17) should be granted, that of Plaintiff (docket nos. 9, 15) denied and the instant complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION:

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

---

for substantial gainful activity." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 2 § 201.00(a), (b).

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.

Dated: August 30, 2010                    s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Richard

Stachowski and Counsel of Record on this date.

Dated: August 31, 2010                    s/ Lisa C. Bartlett
                                           Case Manager